**FILED**
**Sep 25, 2018**
**07:15 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Sonia Ree Chavez, | ) | Docket No. 2018-06-0643 |
| Employee, | ) | |
| v. | ) | |
| Fleetgistics Holdings, Inc., | ) | State File No. 24722-2018 |
| Employer, | ) | |
| And | ) | |
| Agri Gen. Ins. Co., | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF

---

The Court held an Expedited Hearing in this case on September 19, 2018. The present focus is whether Sonia Chavez's termination relieved Fleetgistics Holdings, Inc. of its obligation to pay temporary disability benefits. Because Fleetgistics reasonably terminated Ms. Chavez for violation of its workplace expectations, her dismissal was proper. Thus, the Court denies her request.

### History of Claim

Ms. Chavez worked as an operations manager for Fleetgistics in its Nashville location. On July 28, 2017, she injured her back and neck at work. Fleetgistics accepted the claim and authorized treatment. Providers placed Ms. Chavez on restrictions, including no lifting greater than five pounds and no driving. After the injury, she returned to work until October 26, when Fleetgistics terminated her.

Ms. Chavez testified that her job involved managing accounts for two major clients, Advance Auto Parts and Network Healthcare. Her role was to recruit and dispatch drivers to deliver freight to these businesses. She managed approximately sixty drivers, who were all independent contractors.

According to Ms. Chavez, Fleetgistics decreased the pay available to independent contractors in late 2014. This made it harder for her to recruit drivers. It also meant she

1

often ran routes herself when she was unable to find drivers. She worked nights and weekends in an attempt to meet the clients' needs. A former Fleetgistics driver/independent contractor, Kertrice Wright, corroborated Ms. Chavez's testimony regarding the hours she worked and her difficulty finding drivers. Before her injury, Ms. Chavez and Fleetgistics discussed her increasing difficulty in locating drivers.

Fleetgistics introduced three Performance Improvement Plans to support its contention that Ms. Chavez did not meet her job requirements. One plan listed goals for her to meet in October and December 2016, several months before the work injury. Another contained goals for July and August 2017. The third, which Ms. Chavez never signed, set goals for October 2017. The plans generally called for improvement with drivers' tardiness, scanning deliveries in and out, and their overall professionalism. Ms. Chavez acknowledged signing the first two Performance Improvement Plans but could not recall the details of any conversations she had with Fleetgistics when she signed them.

Concerning the Performance Improvement Plans, Ms. Chavez testified that whenever she learned of drivers falling short in an area, she telephoned them or met with them to discuss the problem. However, she contended that, since they were independent contractors, she had no control over how they actually performed their jobs.

Ms. Chavez further testified that, post-injury, she emailed a supervisor to state that her job duties exceeded her restrictions. The supervisor's response did not acknowledge her restrictions. He wrote: "I have not asked you to run a route. As an OM it is YOUR responsibility to make sure all routes are covered. If you have chosen to run them because you failed to have a contractor run them, that was your choice." (Capitalization in original.) He mentioned numerous staff the company already sent to help her.

In defense of Ms. Chavez's claim, Fleetgistics relied on the affidavit and live testimony of Patrick Grum, its vice-president of operations. His affidavit stated, "Due to multiple incidences of poor job performance over time (for example, scanning percentages that did not meet company standards, uncorrected turnover of independent contractors, not visiting customer sites as required), Ms. Chavez was on her third performance improvement plan."

At the hearing, Mr. Grum testified that Fleetgistics terminated her for performance. He said Advance Auto Parts gave Fleetgistics a "cure" notice, stating that the company's Nashville location was "out of expectations" with its contract and might lose its business. Mr. Grum additionally said that operations managers in other cities performed her same duties and paid drivers the same amount but, unlike Ms. Chavez, had no problems meeting their job requirements. He disagreed that operations managers have no control over independent contractors, explaining that Fleetgistics does the same work for Advance Auto Parts in over ninety locations, and has "not lost work at this

2

magnitude because of these issues[.] . . . The Tennessee market had many more problems than the rest of the country."

Mr. Grum maintained that a good operations manager should be "out ahead of the problems; they were proactively recruiting constantly." He denied that Fleetgistics encouraged Ms. Chavez to run routes, and although "it happens from time to time" that an operations manager runs a route, it was "by no means the expectation or the norm" to do so. Mr. Grum acknowledged that the operations-manager job description required lifting up to fifty pounds, but he said that Ms. Chavez could perform all other duties despite her restrictions. He denied that Advance Auto Parts opening its own distribution center affected the company's decision to terminate her.

Fleetgistics introduced two affidavits to corroborate Mr. Grum's testimony. Greg Taylor, an operations manager in Raleigh, North Carolina, stated that he dealt with the same rate negotiations for drivers, but the rate changes did not cause the problems Ms. Chavez alleged. Chuck Wooley, an operations manager in Memphis, stated that Fleetgistics let Ms. Chavez go after she failed her Performance Improvement Plans and after it "lost a customer that represented 1.6 million dollars of revenue due to the lack of service that Sonya [sic] Chavez provided to them."

Ms. Chavez argued that Fleetgistics terminated her because of her injury and Advance Auto Parts' impending distribution center, which eliminated its need for Fleetgistics' services. The company countered that it terminated her for poor performance.

## Findings of Fact and Conclusions of Law

Ms. Chavez must present sufficient evidence that she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Ms. Chavez seeks temporary partial disability benefits. Temporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery. *Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). However, even though an employee has a work-related injury for which temporary benefits are payable, an employer may still enforce workplace rules. *Id.* at *8. Thus, a termination due to a violation of workplace rules may relieve an employer of its obligation to provide temporary partial disability benefits, provided the termination was related to the workplace violation. *Id.* Courts must "consider the employer's need to enforce workplace rules and the reasonableness of the contested rules." *Id.* at *8-9. An employer will not be penalized for enforcing a policy if the court determines "(1) that the

3

actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Id.*

Here, Ms. Chavez credibly testified that she worked long hours, often running routes when she was unable to find drivers. Ms. Wright's testimony confirmed this. The Court does not question Ms. Chavez's commitment or general work ethic.

However, Mr. Grum also offered credible testimony—specifically that Ms. Chavez was not meeting her job requirements and that the company attempted to address these shortcomings before and after she suffered injury. The affidavits from Mr. Taylor and Mr. Wooley support his testimony.

Mr. Grum explained that when Fleetgistics received the "cure" notice, it began coaching Ms. Chavez. The Court finds Fleetgistics acted reasonably when it put the Performance Improvement Plans in place after learning of a significant customer's dissatisfaction and the potential loss of its business. The Court further credits Mr. Grum's testimony that, post-injury, Ms. Chavez had the physical capabilities to perform every aspect of her job duties except lifting more than five pounds and that the company discouraged her from running routes. In sum, the Court finds that Ms. Chavez's failure to meet her employer's performance expectations was the true motivation for her dismissal.

Mr. Grum denied that Advance Auto Parts' proposed distribution center played a role in Ms. Chavez's termination, and she provided nothing but her own opinion to prove otherwise. Moreover, the Court is not persuaded by her argument that she had no control over independent contractors. Her role, as Mr. Grum explained, was to manage the routes; if an independent contractor proved unsatisfactory, the remedy was to recruit other drivers. Finally, Ms. Chavez argued that she never engaged in "misconduct" warranting her dismissal. The Court agrees. However, this argument overlooks that *Jones* also permits an employee's termination for "ordinary workplace rules and/or expectations." An employer may reasonably expect that an employee perform her job as described and may take appropriate action when she does not.

In conclusion, Ms. Chavez has not provided sufficient evidence from which this Court can hold that she is likely to prevail at a hearing on the merits.

4

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Chavez's request for temporary disability benefits is denied at this time.

2. This case is set for a Scheduling Hearing on **November 26, 2018, at 9:15 a.m.** Central Time. You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Hearing. Failure to call may result in a determination of the issues without your participation.

**ENTERED September 25, 2018.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Ms. Chavez's Affidavit
2. Patrick Grum's Affidavit
3. Greg Taylor's Affidavit
4. Chuck Wooley's Affidavit
5. Wage statement
6. Medical records
7. Causation letters
8. Email to Mr. Ford
9. Mr. Ford's email response
10. Job log

Technical record:
1. Petition for Benefit Determination
2. Employer's Pre-Mediation Position Statement
3. Dispute Certification Notice
4. Request for Expedited Hearing
5. Employer's Brief
6. Employer's Witness List
7. Employee's Brief
8. Employee's Witness List

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent to these recipients by the following methods of service on September 25, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Julie Reasonover, Employee's attorney | | | X | Julie@reasonoverlaw.com |
| Kitty Boyte, Employer's attorney | | | X | Kboyte@constagny.com; dmccorkle@constagny.,com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

6



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

**RFA #:** _____

**Date of Injury:** _____

**SSN:** _____

_____

**Employee**

_____

**Employer and Carrier**

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

**Statement of the Issues**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**Additional Information**

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

**List of Parties**

**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellant ***

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):**_____At Hearing: ☐Employer ☐Employee

Appellee's Address: _____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20__.

[Signature of appellant or attorney for appellant]    _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____ , having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

LB-1108 (REV 11/15)                                              RDA 11082

9. My expenses are:

    Rent/House Payment $ _____ per month      Medical/Dental $ _____ per month

    Groceries      $ _____ per month      Telephone      $ _____ per month

    Electricity      $ _____ per month      School Supplies $ _____ per month

    Water      $ _____ per month      Clothing      $ _____ per month

    Gas      $ _____ per month      Child Care      $ _____ per month

    Transportation $ _____ per month      Child Support $ _____ per month

    Car      $_____ per month

    Other      $ _____ per month (describe: _____ )

10. Assets:

    Automobile      $ _____      (FMV) _____

    Checking/Savings Acct. $ _____

    House      $ _____      (FMV) _____

    Other      $ _____      Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                              RDA 11082